with half of this difference,—$1,966.48,—we feel that we deal as liberally with the committee as justice to the lunatic will permit. He should therefore account for $7,200 of principal and $5,483.51 of income. This total of income is what a principal of $6,528 at 4 per centum per annum would have produced in 21 years. We conclude to charge the committee with $12,683.51. He claims credit for disbursements, $8,080.98. The referee allowed him the amount, less $1,177.90, being credits in excess of $500 without vouchers, and not otherwise supported by competent testimony, under the rule applicable to executors' and administrators' accounts. Code Civ. Proc. § 2729. The committee contends that section 2729 is not applicable. What is now section 2729 was until 1893 section 2734, and was by section 2850 made applicable to an accounting by a guardian. Section 2341 made section 2850 applicable to the accounting by the committee of an incompetent person. The phraseology is obscure, but we think such was the intention. In 1893 the legislature amended the surrogate's law, and changed the number of the sections, so that what was formerly section 2734 is now section 2729. But the legislature manifestly forgot to make the corresponding change in section 2850 of No. 2734 to No. 2729. There could have been no intent to change the law, and we think there was an intent to preserve it, and we feel justified in holding that it is unchanged. People v. Lucas, 25 Hun, 610; People v. Clute, 50 N. Y. 456; People v. Palmer, 52 N. Y. 83; People v. Lord, 9 App. Div. 458, 41 N. Y. Supp. 343. Apart from this rule, we think that many of the items ought to be rejected upon the merits. A considerable item is for carriage hire incurred in enabling plaintiff's mother to visit the incompetent. These visits were commendable, but the mother had means of her own, and under the circumstances the propriety of charging the lunatic with the expense of these visits, in the absence of any order from the court, is doubtful. The same may be said of boxes of good things sent to the lunatic, and charged by the box. There are other objectionable items. This disallowance leaves the committee credited with $6,903.-08. Deducting this from $12,683.51, leaves him a debtor to the estate in $5,780.43 as of January 14, 1898. We cannot say that this is exactly right, but it is an approximation which we believe is about right. The special term was justified in removing the committee, and denying him commissions.

The order appealed from is modified by charging the committee with $5,780.43, instead of $7,266.87, and, as so modified, affirmed, without costs of this appeal. All concur.

---

(28 Misc. Rep. 658.)

### In re COHN et ux.

(Supreme Court, Special Term, New York County. August, 1899.)

REFORMATORIES—DISCHARGE OF CHILD—POWER OF COURTS.

    A minor committed to the house of refuge as a disorderly child, under the New York consolidation act of 1882 (sections 1596, 1597), on the application of his parents, cannot be discharged as reformed by a court on the application of his parents, but only by the action of the board of managers of the institution.

Application by the parents of Harry Cohn for his discharge from the house of refuge.　Denied.

A. B. Jaworower, for petitioners.

John J. Townsend, for house of refuge.

McADAM, J.　The application is by the parents of Harry Cohn to obtain his release from the house of refuge, to which he was committed by a city magistrate on October 19, 1898, as a disorderly child, within the meaning and intent of the statute, to wit, sections 1596 and 1597 of the New York consolidation act of 1882.　Laws 1865, c. 172, §§ 5–7.　The commitment, which was made on complaint of the father, is conceded to be regular on its face, and authorized by the statute.　It is contended, however, that the parents, on the authority of the decision in the Knowack Case, 158 N. Y. 482, 53 N. E. 676, are entitled to terminate the imprisonment on proof that they deem the boy sufficiently reformed.　In the case cited, four children of Knowack's were committed, under the second subdivision of section 291 of the Penal Code, because of the intemperance of their parents. That section authorizes the commitment of any child under 16 years of age who is found "not having any home or other place of abode or proper guardianship; or who has been abandoned, or improperly exposed or neglected, by its parents or other person or persons having it in charge, or being in a state of want or suffering."　The commitment in such case, it will be observed, is not founded on any offense committed by the child, but on the neglect of its parents or guardians. The petition for the release of Knowack's children was founded on indisputable evidence that since their commitment the parents had become sober, industrious people, leading honorable and respectable lives; that they were in comfortable financial circumstances, having a substantial bank account and other valuable property, and were well qualified to relieve the state of the expense of longer caring for their children.　The court, in restoring their offspring, said that the state, as parens patriæ, by the legislation in question, merely sought to protect children who were destitute, and abandoned by those whose duty it was to care for and support them, and that to regard proceedings under that benign statute as criminal in their nature, and hedged about with all of those consequences that follow a judgment of commitment for crime, was to confound remedies.　If young Cohn had been committed under that statute for some grievous fault of his parents, the case cited might require his discharge.　But he was committed as a disorderly person, or quasi criminal, after a trial, and an adjudication to that effect, the object being to bring about, if possible, by discipline and moral instruction, a reformation of his habits of life.　The court, in the Knowack decision, was very particular to say that it was not intended to apply to such a commitment. The purpose of the incarceration being to reform young Cohn, it had to be left to some responsible body of men to determine when he had sufficiently reformed to justify his restoration to society without doing damage to it, and this duty was reposed in the board of managers of the institution to which he was committed (Laws 1824, c. 126,

§ 6; 5 Edm. Rev. St. 207), and presumably, at least, the discretion will not be abused, but will be exercised as the interests of those concerned and the public good require. He was committed during his minority, and "no court can increase the term of detention or shorten it." People v. Degnen, 6 Abb. (N. S.) 90. See, also, In re Riliy, 31 Hun, 612. To permit parents to complain of their children, incarcerate them, and take them out at will would be destructful to all reformatory discipline or control, and seriously interfere with, if not defeat, the beneficent purpose of the statute and the policy of the state in its laudable endeavor to make good men and worthy citizens of disorderly and incorrigible children. The application to discharge must be denied.

Application denied.

---

(28 Misc. Rep. 582.)

PEOPLE ex rel. TAYLOR v. WELDE.

(Supreme Court, Special Term, New York County. July, 1899.)

1. MANDAMUS—RIGHT TO ASSAIL ALTERNATIVE WRIT ON DEMURRER TO RETURN.

The respondent, on an application for mandamus, while contesting a demurrer to defenses interposed by the return to an alternative writ, may attack the averments of the writ on the ground that they are insufficient to warrant the relief sought.

2. GREATER NEW YORK CHARTER—COMMISSIONER OF JURORS—HEAD OF DEPARTMENT.

A commissioner of jurors is not the head of a department, within the meaning of Greater New York charter (Laws 1897, c. 378, § 1543), defining the powers of heads of departments in the removal of subordinate officers.

3. CIVIL SERVICE ACT—TIME OF GOING INTO OPERATION—PRESUMPTION.

Laws 1898, c. 186, entitled "An act to regulate and improve the civil service of the state of New York," amending Laws 1883, c. 354, § 13, which, by its terms, took immediate effect, being highly remedial in its nature, and intended to further a better administration of public affairs, and only incidentally to protect private rights, is presumed, in the absence of evidence as to the precise time when it was approved, to have been in operation during the entire day of its approval.

4. PUBLIC OFFICER—CONDUCT IN OFFICE—PRESUMPTION.

That a public officer has done his duty is presumed only so far as to raise an inference that his acts conform to the law regulating the same, and to impose the burden of proof on one assailing his conduct; but this presumption is insufficient to override such presumptions in favor of the one who has such burden as relate to a determination of the law regulating the officer's actions.

5. GREATER NEW YORK—COMMISSIONER OF JURORS—CIVIL SERVICE ACT.

The office of commissioner of jurors in Greater New York is not a county office, but a city office, to which Laws 1898, c. 186, relating to the removal of officers in the civil service of the state or cities, applies.

6. MANDAMUS—LACHES IN MOVING FOR WRIT.

An unexplained delay of four months to move for mandamus to compel reinstatement to a public office from which the petitioner was removed is sufficient laches to defeat the writ.

Application for mandamus on the relation of David C. Taylor against Charles Welde, as commissioner of jurors, to compel a reinstatement of relator to a public office from which he was removed. Relator demurred to the return to the alternative writ issued on the application. Sustained in part, and overruled in part.